BUCHANAN, Ch. J., delivered the opinion of the court.

Without a sufficient release it is superfluous to say, that *Sarah Gorham*, the wife of the maker of the note, was not a competent witness; and the paper stated to have been ex-ecuted to *Gorham* as a release, and delivered to his wife, upon which she was admitted as a witness, not appearing in the record, we have nothing before us to show, that the objection to her competency was removed, and are there-fore constrained to say, that for any thing appearing in the case, her testimony should not have been received.

As to the second exception, whether in point of fact, usury was committed or not, was a question for the jury, upon the whole of the evidence submitted to them; and whether there was an usurious agreement or not, entered into between the parties, at the time of making the note, or of the endorsement on the back of it, by the defendant, yet if the note was made and endorsed, in execution of a previous usurious agreement, it was tainted with usury; and that was a matter proper to be left to the jury. And there being no evidence in the record opposed to that of *Sarah Gorham*, the court did right in refusing both of the prayers contained in that exception, neither of them having any connexion with the question of her competency. But as the court did wrong in admitting her testimony, which formed the subject of the first exception, the judgment must be reversed.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**

---

## JARRETT *vs.* THE STATE, use of STUMP.

S died, leaving E his widow, and an infant son entitled to personal property. The widow refusing to act as guardian, the Orphans Court appointed J, who accepted the trust. During this guardianship E married again. J then died, leaving the son of S still a minor. E, the mother, as natural guar-dian, with the consent of her second husband, now undertook the guar-

dianship, and gave bond in that character for the faithful discharge of the trust, with security, in which her second husband united. In an action on this bond brought in the name of the State (the obligee,) for the use of the ward after his arrival at full age. HELD, that the mother was the natural guardian. That the Orphans Court had jurisdiction to accept the bond. That the action could be maintained against a surety without suing the guardian. That an order from the Orphans Court directing the guardian to pay the ward, was not essential to the right of action.

When judgment is rendered upon a demurrer in favor of a plaintiff, an inquisition to assess the damages may be waived by consent, and final judgment will be entered for the sum agreed on by the parties.

APPEAL from *Harford* County Court.

*Debt* against the appellant, as one of the sureties in the following bond, entered into by *Elizabeth Jarrett*, (the wife of *Abraham Jarrett*,) as natural guardian to *William Herman Stump*, the equitable plaintiff in the court below, at whose instance and for whose use the action was brought, viz.—"Know all men by these presents, that we, *Elizabeth Jarrett*, *Abraham Jarrett*, *Edward Hall*, *Edward Griffith*, *William B. Stokes*, *Isaac Perryman*, *John Street*, *Thomas Ayres*, *Josias W. Dallam*, *Jesse Jarrett*, and *Joshua Rutledge*, are held and firmly bound unto the State of *Maryland*, in the full and just sum of fifty thousand dollars, to be paid to the said State, which payment, well and truly to be made and done, we bind ourselves and every of us, our every of our heirs, executors, and administrators, in the whole and for the whole, jointly and severally firmly by these presents, sealed with our seals, and dated this eleventh day of *March*, in the year of our Lord eighteen hundred and seventeen. The condition of the aforegoing obligation is such, that if the above bounden *Elizabeth Jarrett*, as natural guardian to *William Herman Stump*, of *Harford* county, shall faithfully account with the Orphans Court of *Harford* county, as directed by law, for the management of the property and estate of the orphan under her care, and shall also deliver up the said property, agreeably to the order of the said court, or the directions of law, and shall in all respects perform the duty of guardian to the

said *William Herman Stump* according to law, then the above obligation shall cease; it shall otherwise remain in full force and virtue in law." Which bond was signed and sealed by the said obligors; and certified by the register of wills of *Harford* county, under the seal of his office to be a true copy taken from the original, &c. The defendant, after craving oyer of the bond, pleaded,

1. General performance of the condition of the said bond by *Elizabeth Jarrett.*

2. That he ought not to be charged with the said debt by virtue of the said supposed writing obligatory, because he saith, that one *Elizabeth Jarrett*, who is named in the said supposed writing obligatory is the principal in the said writing, and that the defendant is only the security of the said *Elizabeth* in the said supposed writing obligatory. And the defendant further saith, that the said State hath not sued out a writ against the said *Elizabeth*, or commenced any suit or action against her to recover the debt aforesaid in the said supposed writing obligatory mentioned, and that the said *Elizabeth* has heretofore, ever since the date of the said supposed writing obligatory, lived and resided within the county aforesaid, and still does reside in said county, and this, &c.

3. That the said *Elizabeth Jarrett* mentioned in the condition of the said supposed writing obligatory, was not at the time of the making of the said supposed writing obligatory, the natural guardian of the said *William Herman Stump*, nor hath she ever at any time since the making thereof, acted as natural guardian to the said *William Herman Stump*, and this, &c.

4. That the said *Elizabeth Jarrett*, in the condition of the said supposed writing obligatory mentioned, at the time of the making of the said supposed writing obligatory, was the wife of a certain *Abraham Jarrett*, to wit, at *Harford* county, aforesaid, and that the Orphans Court of *Harford* county, by which said court the said supposed writing obligatory was taken, had no power or right to take from the

said *Elizabeth*, she then being the wife of the said *Abraham Jarrett* as aforesaid, the said supposed writing obligatory, wherefore the said supposed writing obligatory is null and void, and this, &c.

5. That the said *Elizabeth Jarrett*, in the condition of the supposed writing obligatory aforesaid mentioned, at the time of the making thereof, and at the time she was supposed to have been the natural guardian of the said *William Herman Stump*, was the wife of *Abraham Jarrett*, and was not discovert at any time during the whole period at which she was supposed to be the natural guardian of the said *William Herman*, and that she, the said *Elizabeth*, being the wife of the said *Abraham* as aforesaid, at the time of her supposed accepting the guardianship of the said *William Herman* was incapable of accepting of the guardianship of the said *William Herman Stump*, and she being so unable to accept of the said guardianship, the Orphans Court of *Harford* county had no power or jurisdiction to receive her acceptance as guardian as aforesaid, or to consider the said *Elizabeth* as guardian to the said *William Herman*, and this, &c.

6. That long before the making of the said supposed writing obligatory, to wit, on the 28th day of December, in the year 1802, the said *Elizabeth Jarrett* mentioned in the condition of the said supposed writing obligatory, which said *Elizabeth*, at that time, was sole and unmarried, and she the said *Elizabeth* then and there refused to accept of, or undertake, the guardianship of the said *William Herman Stump*, in the condition of the said supposed writing obligatory also mentioned; and the Orphans Court of *Harford* county for the time being, on the said 28th day of December, 1802, did appoint a certain *John Stump* to be guardian of the said *William Herman Stump*, and the said *John Stump* did then and there give bond and security for the faithful performance of his trust as guardian to the said *William Herman*, in manner and form as required by law, and the said *John Stump* did perform the duties of guar-

dian until the time of the said *John Stump's* death, to wit, on the first day of February, in the year 1816 ; and the defendant further saith, that long before the death of the said *John Stump*, and while he was guardian to the said *William Herman Stump* as aforesaid, to wit, on the first day of May, 1805, the said *Elizabeth*, in the said condition aforesaid mentioned, intermarried with a certain *Abraham Jarrett*, and still is the wife of the said *Abraham Jarrett*, to wit, at the county aforesaid, and while she was covert and the wife of the said *Abraham* as aforesaid, to wit, on the 11th day of March, in the year 1817, she, the said *Elizabeth*, made the supposed acceptance, or undertook the said supposed guardianship of the said *William Herman Stump*, and the said supposed writing obligatory was then and there given for the faithful performance of the said supposed guardianship; and the said defendant saith that the said *Elizabeth* being a married woman as aforesaid, had no power to accept, offer, or undertake a guardianship, and that the Orphans Court aforesaid had no power to appoint the said *Elizabeth* to the said guardianship, and the said Orphan's Court then and there had no power to take from the said *Elizabeth*, she being a married woman as aforesaid, a bond for the faithful performance of the duties of guardian to the said *William Herman ;* wherefore her appointment as, or acceptance of guardian to the said *William Herman* was null and void, and the said bond so taken from the said *Elizabeth*, which said bond is the said supposed writing obligatory aforementioned, is also null and void; wherefore, &c.

7. That the Orphans Court of *Harford* county did not at any time before the impetration of the original writ in this case, order or direct the said *Elizabeth Jarrett* in the said condition of the said supposed writing obligatory mentioned to deliver up the property of the said *William Herman Stump;* and this, &c.

8. That the Orphans Court of *Harford* county, hath no power to take any bond or writing obligatory from any na-

tural guardian for the faithful performance of such guardian's trust, unless some friend of the ward or infant under the care of such guardian make application to the said Orphans Court; and the defendant saith that no person did make any application to the said Orphans Court, and require the said Orphans Court to call on the said *Elizabeth*, in the said writing mentioned, to give bond for the performance of her trust as guardian to the said *William Herman Stump*; and further saith, that the said Orphans Court did take from the said *Elizabeth* the said supposed writing obligatory without any application from any friend of the said *William Herman Stump*; wherefore the said Orphans Court had no power to take any such writing obligatory, and the said supposed writing obligatory so taken as aforesaid, is null and void; wherefore, &c.

9. That the said *Elizabeth*, in the condition of the said supposed writing obligatory mentioned, did deliver up to the said *William Herman Stump*, also therein mentioned, after he attained the age of twenty-one years, all the property of the said *William Herman*; and this, &c.

10. That it does not appear by the records of the Orphans Court of *Harford* county aforesaid, that the said *William Herman Stump* was an infant within the age of twenty-one years at the time the said supposed writing obligatory was made; and because he saith that the said *William Herman* was not an infant within the age of twenty-one years; wherefore he further saith that the said Orphans Court had no power to take a bond for the faithful performance of the said supposed guardianship to the said *William Herman*; and he is, &c.

The plaintiff demurred generally to the *second*, *seventh*, and *eighth* pleas; to which there were joinders in demurrer. The plaintiff replied to the other pleas as follows:

*Replication to the first plea, protesting, &c.*—For replication to the said plea the said State avers, that after the making of the said writing obligatory, the said *Elizabeth*, the natural guardian of the said *William Herman Stump*, to wit,

on the 11th day of March, 1817, and on divers other days and times between that day and the 8th day October, in the year 1821, to wit, at the county aforesaid, had and received for and on account of her said ward, the said *William Herman Stump*, for whose use this suit is instituted, divers sums of money, amou nting in the whole to a large sum of money, to wit, the sum of twenty thousand dollars; and the said State further avers, that afterwards, and before the impetration of the writ original in this cause, to wit, on the 8th day of October, in the year 1821, the said *William Herman Stump* arrived at the full age of twenty-one years, at the county aforesaid, and was then and there entitled to have and receive of the said *Elizabeth*, as guardian aforesaid, the aforesaid large sum of money, to wit, the sum of twenty thousand dollars, which the said *Elizabeth* had so as aforesaid received; yet the said *Elizabeth*, although often requested so to do, hath not yet paid the same or any part thereof to the said *William Herman Stump*, but hath therein wholly failed and made default, and the said sum of money so had and received by the said *Elizabeth* as guardian aforesaid is wholly unpaid and unsatisfied to the said *William*, contrary to the duty of the said *Elizabeth* as natural guardian aforesaid, and contrary to the effect of the said condition of the said writing obligatory, to wit, at the county aforesaid; and this the said State is ready to verify, &c.

*Replication to the third plea.* That the said *Elizabeth*, long before the execution of the said writing obligatory, to wit, on the 1st day of March, in the year 1800, intermarried with a certain *Herman Stump* of *Harford* county, and by her said husband she the said *Elizabeth* afterwards had issue, the said *William Herman Stump*, to wit, at the county aforesaid; and the said State further avers, that afterwards and before the execution of the said writing obligatory the said *Herman Stump*, the husband of the said *Elizabeth*, departed this life at the county aforesaid, to wit, on the 1st day of March, in the year 1802, leaving the said *William Herman Stump* an infant within the age of twenty-one

years, to wit, of the age of two years; and the said State
further avers, that at the time of the execution of the said
writing obligatory, to wit, on the 11th day of March, in the
year 1817, the said *William* was an infant within the age
of twenty-one years, to wit, of the age of sixteen years, to
wit, at the county aforesaid; and the said State further
avers, that the said *William Herman Stump* did not arrive
at the full age of twenty-one years until long after the exe-
cution of the said bond, to wit, until the eighth day of Octo-
ber, in the year 1821. And the said State further avers,
that after the making of the said writing obligatory, the said
*Elizabeth*, as the natural guardian of the said *William
Herman Stump*, &c.; and here replication assigned a breach
as in the replication to the first plea.

*Replication to the fourth plea.* That the said *Elizabeth*,
being the natural guardian of the said *William Herman
Stump*, and covert of a certain *Abraham Jarrett* at the time
of the execution of the said bond mentioned in the said
*fourth plea*, did execute the same bond by and with consent
of her husband *Abraham Jarrett*, to wit, at the county afore-
said, and after the making of the said bond, the said *Eliza-
beth*, as natural guardian foresaid, &c; and this replication
assigned a breach as before.

*Replication to the fifth plea.* That the said *Elizabeth*,
being the natural guardian of the said *William Herman
Stump*, and covert of the said *Abraham Jarrett*, at the time
of the execution of the said bond, did on the 11th March,
1817, execute the said bond, by and with the consent of her
said husband, *Abraham Jarrett*, to wit, at the county afore-
said; and the said State further avers, that the said *Eliza-
beth* did then and there undertake and accept the burthen
of the said guardianship, by and with the consent of her
said husband, the said *Abraham*, and after the making and
execution of the said bond as aforesaid, the said *Elizabeth*
as natural guardian aforesaid, on, &c.; assignment of breach
as before.

*Replication to the sixth plea.* That the said *Elizabeth*, prior to her marriage with the said *Abraham Jarrett*, to wit, on the first day of March, in the year 1800, was the wife of a certain *Herman Stump*, by whom she had issue the said *William Herman Stump*, to wit, at the county aforesaid; and the said State further avers, that the said *Herman Stump*, the first husband of the said *Elizabeth*, died at the county aforesaid, leaving the same *William Herman Stump* an infant, within the age of twenty-one years, to wit, of the age of two years; and the said State further avers, that afterwards, to wit, on the day and year aforesaid, at the county aforesaid, the said *Elizabeth* intermarried with the said *Abraham*, and that afterwards and before the execution of the said writing obligatory, the said *John Stump*, to whom the guardianship of the said *William Herman Stump* had been granted, as alleged in the said *sixth plea* of the defendant, departed this life, to wit, at the county aforesaid, leaving the said *William Herman Stump* still an infant, within the age of twenty-one years, to wit, of the age of fifteen years; and the said State further avers, that at the time of the execution of the said writing obligatory, to wit, on the eleventh day of March, in the year 1817, the said *William Herman Stump*, still remained an infant, within the age of twenty-one years, to wit, of the age of sixteen years, to wit, at the county aforesaid, and the said *Elizabeth*, then being the wife of the said *Abraham Jarrett*, by and with the consent of the said *Abraham*, then and there made and executed the said writing obligatory, and then and there, by and with the consent aforesaid, undertook the burden of the said guardianship; and the said State further avers, that after the making of the said bond, the said *Elizabeth*, as natural guardian aforesaid, on, &c.; and here an assignment of breach as before.

*Replication to the ninth plea.* That after the making of the said writing obligatory, the said *Elizabeth* as the natural guardian of the said *William Herman Stump*, to wit: and then proceeded to assign a breach as before.

*Replication to the tenth plea.* That at the time of the execution of the said writing obligatory, to wit, on the eleventh day of March, in the year 1817, the said *William Herman Stump* was an infant, within the age of twenty-one years, to wit, of the age of sixteen years, at the county aforesaid, and the said State further avers, that after the making of the said writing obligatory, the said *Elizabeth,* being the natural guardian of the said *William Herman Stump,* as such, to wit, &c; breach assigned as before.

To these *replications* the defendant entered general demurrers, and to which there were joinders in demurrer. The County Court ruled good, the demurrers to the *second, seventh* and *eighth* pleas, and overruled the demurrers to the replications to the other pleas, and gave judgment that the plaintiff ought to recover its said debt, &c. By agreement of the parties, the necessity of executing a writ of inquiry was waived, and judgment on the demurrers entered for the penalty of the bond and costs, to be released on payment of, &c. Judgment being thus entered, the defendant appealed to this court.

The cause was argued before BUCHANAN, Ch. J., EARLE, and DORSEY, J.

*C. S. W. Dorsey,* for the appellant, contended,

1. That an action cannot be sustained against a surety in a bond, if the principal residing in the same county is not sued.  2. That a suit cannot be sustained on a guardian's bond, for not delivering up the property of his ward before an order has been made by the Orphans Court to that effect. 3. That if the mother, while she is sole, refuses to act as natural guardian, and upon her refusal, a guardian is appointed, she cannot after her marriage and while she is *covert,* accept of, or undertake such guardianship. 4. That a *feme covert* cannot act as natural guardian under the provisions of the act of assembly.   5. That the several replications to the 1st, 2d, 3d, 4th, 5th, 6th, 9th, and 10th pleas,

and especially the one to the 1st plea, are insufficient, and bad on general demurrer; because they do not state that *Elizabeth Jarrett*, the guardian, had not accounted with the Orphans Court, or that the Orphans Court had directed her to pay over to her ward any property of his in her hands.

The questions will principally depend upon the acts of assembly of 1798, *ch.* 101, *sub-ch.* 12, *sec.* 1, 4, and 1816, *ch.* 203, *sec.* 1.  1. A mother is not the natural guardian of her children on the death of her husband. *Co. Litt.* 84, 88, (*note* 12,) *Ratcliffe's* case; 3 *Coke* 38. *Dep. Com. Guide*, 144. 1 *Blk. Com.* 461.  2. If she is not the natural guardian to her children, then her bond was not legally taken under the act of 1816, *ch.* 203.  3. If the mother can be a natural guardian, yet she cannot, if a married woman, act as such. By the act of 1798, *ch.* 101, *sub-ch.* 12, *sec.* 4, the guardian must give bond.  This act points out who can be guardian, and how the guardian is to be appointed.  A *feme covert* cannot make a contract.  The act of 1798, *ch.* 101, *sub-ch.* 12, *sec.* 3, and 1816, *ch.* 203, authorises the taking of the bond of a natural guardian.  Under the first act, when called on by some friend of the infant, the guardian is to give bond, but the act does not require that the guardian shall give security; but under the last act security is required. If a mother can be a natural guardian, yet if she refuses, and a new guardian is appointed, who afterwards dies, having accepted, &c. she cannot afterwards be the natural guardian—no right could revert afterwards to her as natural guardian.  4. Can a *feme covert* under the acts of assembly act as a natural guardian? She is not competent to make a contract, except in a few instances, not coming within this case. *Manly vs. Scott*, 1 *Siderf.* 120.  The bond of a *feme covert* is *ipso facto* void at common law.  5 *Bac. Ab.* tet. *Obligation*, 161.  *Roberts vs. Pierson*, 2 *Wills*, 3.  1 *Bac. Ab. Tit. Baron and Feme*, 507.  If she cannot be bound at common law, can she be bound under our acts of assembly? There is no authority given for binding her under the acts of 1798, *ch.* 101, or 1816, *ch.* 203.  The act

of 1798, *ch.* 101, *sub-ch.* 3, *sec.* 1, directs that executors shall give bond with sureties. *Sub-ch.* 4, *sec.* 1, points out who may be an executor, and by *sec.* 7, if above eighteen or under twenty-one years, his bond shall be as binding as if he were of full age. By *sec.* 8, a *feme covert* cannot be an executor, unless her husband shall with two sureties give bond. Also that the bond of a *feme sole* executrix, above the age of eighteen years, shall be binding in the same manner as if she were of the age of twenty-one years. Unless therefore, an act of assembly does expressly give the right to a *feme covert* to be a guardian, and to execute a bond to be binding on her, which she could not do at common law, a bond so executed by her is void. The common law is not repealed unless it is expressly done by act of assembly, *Arthur vs. Bokenham*, 11 *Mod.* 150. If the bond is void as to the principal, she being a *feme covert*, it is void as to the sureties in it, when given to the State, which makes it different from a bond given to an individual. If a *feme covert* cannot bind herself by bond under the acts of assembly, any bond executed by her is void. It is not a bond unless made pursuant to law. A bond given to the State, unless authorised by act of assembly, is a void bond. 5. It is not stated in any of the replications, that *Elizabeth Jarrett* did not account with the Orphans Court, or that, that court had directed her to pay over to her ward any sum of money. 1 *Chitty's Plead.* 599. *Cornwallis vs. Savery*, 2 *Burr.* 774. *Hayman vs. Gerrard*, 1 *Saund.* 101, 102. 5 *Com. Dig.* tit. *Pleader*, (*F.* 14.) (*F.* 15.) (*Q.* 5.) (*M.* 3.) *Gerven vs. Roll, Cro. Jac.* 133. *Turner's* case, 8 *Coke*, 133. 6. By the act of 1720, *ch.* 24, no suit can be maintained against a surety in an administration or testamentary bond, before a *non est inventus* on a *capias ad respondendum* be returned against the executor or administrator, or a *fieri facias* returned *nulla bona,* &c. The act of 1798, *ch.* 101, *sub-ch.* 12, *sec.* 4, places guardians' bonds on the footing of the bonds of executors and administrators.

*Gill*, and *Taney* for the appellee.

The first question presented by the third plea, is, whether the facts stated in the replication, constitute *Elizabeth Jarrett* natural guardian.

1. The father is the natural guardian of the person of the son (who may inherit from him) until he is twenty-one years of age, and if the father die, the mother is the natural guardian. In maintaining this proposition, the distinction is to be kept in view, between guardian by nature, and guardian by nurture. The first being confined to the heir apparent, the second applying to all the children, and not for the present involving the inquiry as to property, *Co. Lit.* 123, *no.* 9, *and* 12, *nurture, no.* 13. *Co. Lit.* 84, *a. and b.* 3 *Co. Rep. Ratcliffe's case. Carth.* 384, 386. 2 *Fonblanque,* 237, 8 *and* 9. 2 *Atkins,* 70.—in point. The mother is bound to support and educate the child. *Wilkes and Wife vs. Rogers, et al.* 6 *Johns. Rep.* 566, 575.

It is not necessary to constitute this guardianship by nature, that the mother or even the father had real estate, to which the son could be heir. *Co. Lit.* 84, *a. and b. and* 123, *no.* 12. 3 *Co. Rep.* 38. 2 *Fonb.* 237, 8 *and* 9. By the common law, *William Herman Stump* would be the heir apparent to his mother. For it does not appear that there was any other son, none other is alleged in the pleading, and none other will be presumed. But our act of descents has put this point out of the question, for every child is an heir apparent. It may therefore, be safely concluded, that the mother was the guardian by nature, or natural guardian to her son.

2. The guardianship of the person gave the guardianship of the property in question. At the time this bond was given there was no other guardian but the natural guardian, and the custody of the person draws after it, the custody of all property for which the law, has not otherwise provided. *Co. Lit. sect.* 123, *no.* 13. *and note* 16. 3*d Kind of Guardian,* 2 *Fonb.* 241; 242, *note.* 3 *Atkyns,* 631. *The King vs. Delaval,* 3 *Burr.* 1436. But even conceding that the last

proposition could not be maintained according to the *English* law; yet by our act of assembly, the custody of the property is by necessary implication given to the natural guardian.

The words guardian by nature must be understood in their legal sense, that is, a giving the custody of the person in the manner heretofore pointed out. It is obvious from the act, that the guardianship of the person and property were to go together, and there was to be no other guardian as to the property, where the infant had a natural guardian. The rights of a natural guardian, and a guardian by statute as regards the property, being the same.

It is very clear that the guardian by statute had the guardianship of the property. 1798, *no.* 101, *ch.* 12.

The mother therefore was, 1. The natural guardian. 2. As such, had the custody of the person and property. If these two propositions be true, then the replication is good, and the demurrer ill.

*3d Point.* But conceding for the sake of argument, that the replication does not show enough to entitle the plaintiff to recover, and that it is therefore bad—yet it is insisted that the judgment in favor of the plaintiff is nevertheless right, because the plea is not a sufficient answer to the declaration, and therefore not a legal bar. 1. On argument of demurrer, the court will give judgment *against* the party whose pleading was first defective in substance. 1 *Chitty*, 647. *Hob.* 14, 199. 8 *Co. Rep.* 120. *United States vs. Arthur,* 5 *Cranch,* 259. 1 *Saunders,* 285. *no.* 5. 2. Where there are several pleas, each must stand or fall by itself. 1 *Chitty,* 543. 3. Every plea must answer the whole declaration ; and if a plea professes to answer the whole, but the matter pleaded is only an answer to part, the plea is ill on demurrer. 1 *Saund.* 28, *no.* 2. 1 *Chitty,* 509. A defeazance being in favor of the obligor, must be strictly performed according to its terms, and the plea must show it. 2 *Saund.* 48, *b. note.* 2 *Chitty,* 481, *note y. and z.* 2 *Chitty,* 485, *excuse,* &c. 4. The plea assumes to answer the

whole declaration, but only answers part. The plea alleges she was not natural guardian. The condition is, not only that she shall account, &c. as natural guardian, but also that she shall *"perform the duty of guardian according to law."* If, therefore, she was guardian by appointment from the court, the condition of the bond embraces those duties. For aught that appears in the bond, condition, writ, declaration and the plea, (and the court on this point, can notice nothing else,) she was guardian by the court's appointment, or may have been testamentary guardian. The plea should have been, that she was not guardian—and nothing short of this allegation could excuse the performance. If she was guardian in any way, and did not perform the duty, the condition is broken. Conclusion; the plea is bad, and the judgment right.

5. If, however, the bond should be interpreted to be conditional for the performance of her duties as natural guardian, then, it is insisted that the defendant is *estopped* by his bond, from denying that she is the natural guardian. *Allen* 13, *in point. Dyer*, 196, *a. Cro. Eliz.* 756. 1 *Saun.* 21, *b. no.* 2, *in point.* The above cases show there is no difference between the formal recital of the fact as a recital, and the necessary implication of the fact from the words of the condition. *Vide Allen*, 13. *Dyer*, 196. 1 *Saun.* 216, *no.* 2. Where the estoppel appears on the record, the plaintiff need not reply the estoppel, but may take advantage of it on demurrer. *Cro. Eliz.* 756. *Dyer*, 196, *e.* 1 *Saun.* 325, *no.* 4. The plaintiff has not lost the benefit of the estoppel by replying, because the estoppel appears on the pleading, and may therefore be relied on, at any time where there is a joinder in demurrer. That joinder puts it to the court to say which party committed the first fault. The cases where the reply deprives the party of the estoppel is where issue is taken on the fact.—It is where the party by replying makes the estoppel matter of evidence only. Matter of estoppel is never such where relied on as evidence. *Hob.* 56. *4 Co. Rep.* 53. *8 Rep.* 120. 1 *Saund.* 325, *no.* 4,

276, *a. no.* 2. *Outram vs. Morewood,* 3 *East.* 348, 351, 355. *Hob.* 206. Issue was joined on the fact, 2 *Ray.* 1154, *Kemp vs. Goodall,* 2 *Ray.* 1051, *contra.*

The *fourth* plea states, she was a married woman, and therefore, incapable of executing a bond.

The *fifth* plea states, that she was a married woman, and therefore, incapable of accepting the guardianship.

The fourth plea does not deny that she was the guardian, but assuming that she was guardian, pleads that she was covert, and that the coverture avoids the bond, as to her and her securities. The replication alleges her to be guardian, that she gave the bond with her husband's consent, and assigns the breach. To this there was a demurrer. 1. On this issue, the question is not whether she was guardian or not.—It is admitted that she was guardian. Her coverture in this plea, is not alleged as a disqualification; and she is to be taken as guardian notwithstanding her coverture. But the defence is, that being guardian, and being at the same time covert, the bond is void as to her and her sureties. The Orphans Court had power to take a bond from a natural guardian, and on this plea it is not denied, that such power was regularly executed. 1798, *no.* 101, *ch.* 12. 1816, *ch.* 203. Even if the bond is void as to her, it binds the security. If she did not perform the duty, he is liable by his contract. If the proposition be true that the bond is *void, it* would come to this, that she would continue guardian without security, in despite of the law which requires it, *or* that she would be deprived of the guardianship of the child, when she offered to fulfil all the duties of, and, when the law itself imposed on her the guardianship. It would be absurd to suppose that either one of such propositions could be maintained. The replication to the *fourth* plea is good, and the judgment right. 2. But it may be further maintained, that the bond of the guardian is good, and binds her, although she was a *feme covert* at the time. The common law doctrines, as to the disability of *feme coverts,* do not apply in their full extent to the cases of fiduciary appoint-

ments, regulated by the Chancery and Ecclesiastical Courts, whose doctrines are borrowed from the civil law. The case of a *feme covert* executrix will furnish an apt analogy, and shew the rule in all cases like to it. A *feme covert* may, with the consent of her husband (at common law) become executrix, and where she has thus agreed and accepted, she is bound by all the contracts and liabilities attached to the office as if she were sole. 3 *Bac. Ab.* 9. 10. The law does not impose on her the duty of executrix, she becomes such by virtue of her agreement, her contract, and having made the contract, she incurs all the liabilities attached to it, as if she were a *feme sole.* As natural guardian, however, the law imposes the duty upon her as the mother of the orphan. Her consent is not asked nor required. It belongs to her station as mother. But although the law imposes on her the duty of natural guardian, yet, it does not impose on her the obligation of giving bond and surety for the performance of that duty. She may refuse, and if she refuses she ceases to be guardian, and the law transfers the duties and obligations of guardian to the persons appointed by the court. 1798, *no.* 101, *ch.* 12. But with the assent of her husband, she may assent to enter into this obligation, for the same reason that she may take upon herself the obligations of an executrix. She cannot do it without his consent, because his interest is involved in it. But when she has entered into it, it binds her, although she was covert at the time. Her bond therefore binds her, 3 *Bac. Abr.* 9, 10. If this principle is not sound the mother cannot be the guardian of her own children if she marries again—Cannot even be appointed by the Orphans Court, although she wishes it, and her second husband wishes it. It is not, however, necessary to maintain this proposition in order to sustain the judgment of the court on the fourth plea. The grounds taken on the first point are sufficient, whether the *feme covert* be bound or not. The replication is therefore sufficient, and the plea bad, for the reasons assigned.

*5th Plea.* This plea alleges the fact, that she was a married woman at the time she gave the bond, and therefore, incapable of accepting the guardianship. The replication states, that being the natural guardian, she executed the bond and took on herself the burthen of the trust, with her husband's consent. This issue does not bring in question directly, the invalidity of the bond of a *feme covert.* The point presented is this: that being a married woman she could not be guardian, and as she could not be guardian the court could not take her bond. The defendant is estopped by his bond, from alleging that she was not guardian. The guardianship may, for aught that appears in this issue, have fallen upon her when sole, and in that case, her own marriage could not discharge her from the obligations she had before undertaken. Example, executrix marries. A widow may be the guardian of her children by the first marriage. No assent on her part is necessary when the law imposes the duty. There is no difficulty therefore, on the score of her disability to contract. None of the cases intimate that the guardianship of the mother is only *dum sola. Byrne vs. Van Hoesen,* 5 *Johns.* 66, 67, 1 *Ball. & Batt.* 60, 61. *Freto vs. Brown,* 4 *Mass. Rep.* 675.

*6th Plea.* The points already discussed apply to this, 1. The defendant is estopped. 2. The mother is the natural guardian where there is none other. 3. The subsequent marriage cannot put an end to her guardianship. 4. The interposition of the former guardian can make no difference when he is dead. The guardianship by nature flows from the natural obligations of parent and child. *Vid. Co. Lit. sec.* 123, *note* 12.

*R. Johnson* in reply.

1. Is the *first* plea of general performance defective? It is said the bond is in the disjunctive. The plea was the only one which could have been pleaded. Suppose the defendant had pleaded that *Mrs. Jarrett* had faithfully accounted, and it had been proved that she had accounted, but

not paid over. The bond is, that she must account and *pay over*, &c. The plea is, that she did account and pay over, &c. It goes to the whole that she did account—did pay over, and did perform all the duties required of her as natural guardian. In the *Union Bank of Maryland vs. Ridgely*, *Harr. and Gill*, 324, a plea of general performance would not answer, because the bond did not contain only affirmative stipulations to be performed. *Steph. Plead.* 368.

2. The plea of general performance is a good plea; but the replication to it is bad. If the plea was bad, and the replication was also bad, the defendant can take advantage of the defect in the replication. The rule that you must go to the first fault, does not apply to a case like this—being on a bond with a collateral condition. Suppose the breaches had been assigned in the declaration, instead of the replication, could not the defendant, if the declaration was defective, have demurred to it? Here the true cause of action is set out in the replication, on the assignment of breaches ; and the replication is to be considered as a declaration, and the breaches defectively assigned, may be demurred to. 5 *Com. Dig.* tit. *Pleader, (M. 3)* 468. *Ridgway's* case, 3 *Coke*, 52. *Steph. Plead.* 162. In *The United States vs. Arthur*, 5 *Cranch.* 259, the defendant did not crave oyer, so that it did not appear, that it was a bond with a collateral condition.

3. The replication is defective, because the breach must be such as to show a good cause of action, and bring the plaintiff within the stipulations contained in the bond. The guardian was not bound to pay over to the ward, any property but such as came into her possession under the act of assembly. The breach is out of the condition of the bond. The act of 1798, *ch.* 101, *sub-ch.* 12, *sec.* 1, 2, 3, points out the particular description of property which is to be placed in the hands of the guardian. The act 1816, *ch.* 203, is similar to the act of 1798, *ch.* 101. The replication states, that *Mrs. Jarrett*, as natural guardian, had in her hands $9,000, belonging to her ward, &c. Admit this to be a

fact, she might have that sum in her hands as natural guardian, and yet the bond may not be answerable for it. This sum might have come to her hands from a gift, &c. or a prize drawn in a lottery, or in some other manner different from that pointed out by the act of 1798. The bond was given for a limited purpose, and the replication does not state that the above sum came to her hands under the act of assembly.

4. Suppose the bond does cover all money received as guardian, it is not the duty of the guardian to pay over all money he may receive. He is to account with the Orphans Court, and pay over such sum of money as that court may direct him to pay. The bond is to be sued only on the neglect of the guardian to account, or to pay over such sum as the Orphans Court shall direct. It is not stated in the replication that *Mrs. Jarrett* failed to account, or refused to pay over what the Orphans Court directed her to pay.

5. The defence in the *fourth* and *fifth* pleas, is, that the bond is null and void, and these pleas are analogous to special pleas of *non est factum*, and are not different from the plea of *non est factum*, or duress. The doctrine of estoppel does not apply to their being pleaded by the defendant. But suppose it does, the plaintiff cannot take advantage of it. This is in fact the suit of *W. H. Stump*, the *cestui que use*, and who now relies upon the doctrine of estoppel, which must be reciprocal, and bind both parties. Strangers cannot take advantage of it. No one can take advantage of it who is not bound by it. *Co. Litt.* 352, a. Would *W. H. Stump* be bound by the recital in the bond? He would not. The Orphans Court could not bind him, unless by proceedings within the sphere of their duty. Suppose *W. H. Stump* had denied that *Mrs. Jarrett* was his natural guardian, and he had brought suit to recover back the commission allowed to her as guardian, by the Orphans Court, would the recital in the bond that she was guardian bind him?

6. It is the bond of a *feme covert*, and void as to her and her sureties. The question is not whether it would be a good bond at common law, if it had been given for the payment of money; but is it such a bond as is authorised under our acts of assembly? When the Orphans Court take a bond which does not bind the principal obligor, they take a bond which is null and void. But a *feme covert* cannot execute a valid bond, although she may enter into contracts in certain cases. To execute a bond legally, it must bind the heirs of the obligor. This a *feme covert* could not do. She can only contract so as to bind herself personally. *Caudell vs. Shaw*, 4 *T. R.* 363. But she cannot be a guardian under our acts of assembly, unless she can execute a bond as such; and she cannot do so. The consent of her husband does not make her bond binding. It is to make the husband executor or guardian; it is to bind him and not her; because her contracts, while *covert*, are the contracts of her husband, where she can contract. Here the husband is one of the sureties in the bond, instead of being the principal; and if the defendant pays what is recovered against him by the judgment, he cannot go upon the judgment against the husband, except to compel him as one of the sureties, to pay his proportion of the debt.

7. Is a *feme covert* contemplated by our acts of assembly, to act as natural guardian? She is not, because she must give bond, which she cannot do. Again, she is to account with the Orphans Court, and if she does not, she is liable to be attached and fined. Her husband might if he chose, prevent her from accounting.

8. As to the demurrer to the replication to the *sixth* plea. If she was the natural guardian—whether the intervention of a regular guardian, appointed by the Orphans Court, did not absolve her right as natural guardian? It operated as an extinguishment of her right forever. If the person entitled to the guardianship refuses, the Orphans Court have a right to appoint a guardian. Here *Mrs. Jarrett*, before her second marriage, refused to act as guardian, and a guar-

dian was regularly appointed, and the custody of the ward and his property, were placed under the care of the guar-dian so appointed.   On the death of that guardian, the right devolved on the representatives of such guardian, who were answerable for all loss, &c. and they would continue to have the care of the person and property of the ward until a regular guardian was appointed by the court.   But suppose the property of the ward was in the custody of the Orphans Court on the death of *J. Stump*, and the court had a right to appoint another guardian, it would be different from the natural guardian.   The court could not in such case ap-point a *feme covert.*

*Taney*, for the appellee, after the argument, filed the fol-lowing notes :

The argument offered by the concluding counsel, in be-half of the appellant, was.   1. That the power of appointing a guardian is confined to the cases where the orphan is en-titled to a distributive share, &c. and being appointed in such cases only, his bond covers only property of this de-scription.

2, That the act of 1816, subjects the bond of a natural guardian, to the same rules with an appointed guardian, and therefore covers only property of the same description.

*Answer.* 1. The first proposition is denied, and *it is insisted* that although the power of appointment is conferred only in the cases enumerated, yet when the appointment is made, the whole property of the infant, no matter how acquired, is com-mitted to the guardian, and he is responsible for it.  1798, *no.* 101, *ch.* 12, *sec.* 5 and 11.   If the aforegoing be not true, yet the act of 1816 applies to, and covers all the property, no matter how acquired, and that the words referred to in the appellant's second proposition, apply only to the manner and form in which he shall discharge the duty, and do not re-strain the general words used in relation to his property and estate.

3. Conceding both of the above answers to be insufficient, yet the replication is good. For if the bond covers only the property before mentioned, then the guardian can receive none other in the character of guardian; and as guardian the averment therefore, in the replication, that she received it as guardian, and that it was due from her as guardian, is an averment that it was property which she was entitled to receive in that character, and by virtue of that authority—and if she could, and did receive it in that character, the bond she gave necessarily covers it, as well as in its language as in its spirit.

There is another view of this case, which occurred after the argument on the part of the appellee was delivered, which is worthy of the consideration of the court, and therefore presented.

The argument on both sides assumed, that if in point of law she was not entitled to act as natural guardian, by reason of her coverture, the bond was void.

Whether this is a sound and safe principle to adopt, the following principles will perhaps test.

1. If the Orphans Court appoint an administrator, and a will is afterwards discovered, yet his acts are as valid and obligatory on the administration, during the time he holds the office, and are the same as if he were rightfully appointed—yet the Orphans Court from a mistake in the fact, would have made an appointment which the law did not authorize.

2. If in a case of intestacy, the Orphans Court appointed one person administrator, when another person was by law entitled to the appointment, and desired to obtain it, yet until these letters were revoked, the party appointed would have the rights, and be subject to the obligations of an administrator. Here would be a mistake in law and not in fact.

The reason of the rule is, that if the court be authorised to decide on the subject—if they decided wrong from a mistake of the law or the fact, yet while the decision stands, all

parties are bound ; and ·this it is conceived would be the .case even if a *feme covert* were appointed, and her husband had not signed the bond, and she alone had signed it.

In the case last supposed would not the securities be bound? Would she be entitled to collect debts and give acquittances, and yet the infant legatees or distributees, be without remedy ? Apply these principles to the case of a guardian.

1. Suppose the Orphans Court take a bond from a man as natural guardian—supposing him to be such, when in fact the court are deceived as to the relation in which he stands to the infant. Here would be a mistake in the fact, yet would not his securities be liable?

2. Suppose the court take a bond from a person of whose relation to the infant they are correctly informed, and whom they suppose to be in point of law the natural guardian, and they are mistaken in the law, is not his bond liable?

In both of the cases above supposed, the court would by the act of accepting the bond, have decided the right, and it would seem that such decision would stand on the same ground with a decision appointing an administrator.

In the case before the court, the Orphans Court have decided by accepting the bond, that the mother, although married a second time, was the guardian. It has judicially recognized her as guardian. Admit them to be wrong, and to be mistaken in the law, would not a delivery of property to her under the order of the court, discharge the party ?

Suppose the court had ordered the executor of the former guardian to deliver the property to *Mrs. Jarrett*, and they in obedience to the order had delivered it—would the security of the executors be still liable?

Suppose a legacy by any one else to the ward, and the court had ordered the executor to pay it to *Mrs. Jarrett*—would the securities of the executor be still liable?

If they would not, then they would not be liable if they paid it without order—for the order of the Orphans Court

Jarrett *vs.* The State, use of Stump.

could confer no more authority to pay, than the acceptance of the bond itself conferred.

If *Mrs. Jarrett* is so far to be treated as natural guardian, that payments to her would discharge the parties—is the infant ward without remedy?

It is the bond that gives her the right to receive—and if the acceptance of the bond enables her to receive and acquit, and if it be good for that purpose, must it not also be good to compel her to pay?

And if it should even be held that her coverture, was a bar as respects process against her, yet why should the security in bond, which gave her power to take as guardian, be discharged from the obligation of compelling her to pay as guardian?

The inability of the wife to give a bond, is nothing more than her common law inability to contract. There is no peculiar common law disability to give bond.

The case in 4 *T. R.* 363, cited by appellant, does not impeach the proposition above mentioned. The case turned upon the custom of *London*, which is an exception to the common law rule above mentioned—and the case is decided not by the extent of the common law rule, but by the extent and lawfulness of the exception.

The court decide that the custom does not extend to the bond, and that such a custom would not be lawful.

The decision is upon the extent of the exception, and not the extent of the rule.

But the power of a *feme covert* to act as executrix, with the assent of her husband, is part of the common law, and not a part of the local custom law.

It is a limitation of the common law rule, by the common law itself, and it gives a power to contract as executrix, or in a representative character, when she cannot do it for herself.

JUDGMENT AFFIRMED.

N. B. This case was decided in 1827.